IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CYNTHIA GOODEAGLE and KENNETH )
  GOODEAGLE, )
 )
        Plaintiffs, )
vs. ) NO. CIV-09-490-D
 )
UNITED STATES OF AMERICA, )
 )
        Defendant. )

**O R D E R**

Before the Court is Defendant's Motion to Strike Expert Witness [Doc. No. 21], in which Defendant asks the Court to strike Dr. Edwin Chappabitty as an expert witness on behalf of Plaintiffs. Plaintiffs timely responded, and Defendant filed a reply. In a separate motion [Doc. No. 28], Plaintiffs ask the Court to hear oral argument on the motion to strike. The Court has considered the request to hear oral argument, but has determined that the motion to strike can be determined on the briefs and the record submitted by the parties.

I. Background:

Plaintiffs filed this action against the United States, alleging malpractice and negligence in connection with emergency medical treatment provided by the Indian Health Service in Lawton, Oklahoma ("IHS-Lawton") to Plaintiff Cynthia Goodeagle ("Mrs. Goodeagle") in February 2008. Plaintiffs have listed as an expert witness Dr. Edwin Chappabitty, who was employed at IHS-Lawton at the time Mrs. Goodeagle received the treatment at issue. Although he was not present at her initial emergency room visit, Dr. Chappabitty saw Mrs. Goodeagle during a related subsequent emergency room visit, and directed her transfer to Baptist Hospital for neurological care. Dr. Chappabitty retired from IHS-Lawton in August of 2008.

According to the allegations in the Amended Complaint, Mrs. Goodeagle made two trips to the emergency room at IHS-Lawton on February 16, 2008. On her first visit, she complained of severe headaches; she was discharged with an undefined diagnosis of "Viral Syndrome" and instructions to take Mucinex, an over-the-counter decongestant. Mrs. Goodeagle returned to the emergency room that same evening, with increased symptoms including vomiting, sensitivity to light, dizziness, and worsened headaches. The physician who attended Mrs. Goodeagle on her second visit concluded that the change in symptoms was due to an allergic reaction to the Mucinex, and she was again discharged with a diagnosis of "Viral Syndrome."

On February 19, Mrs. Goodeagle returned to IHS-Lawton with increased pain and significantly impaired ability to function normally. Dr. Chappabitty, the physician who saw her on that date, immediately ordered a CT scan, after which she was diagnosed with an acute hemorrhagic infarction on the left temporal/parietal region of her brain. Mrs. Goodeagle was subsequently transferred to Baptist Hospital in Oklahoma City, where she underwent surgical treatment with limited success. She alleges that, as a result, she incurred a significant brain injury resulting in permanent impairment.

On May 11, 2009, Plaintiffs filed this action against the United States, alleging negligence and medical malpractice based on her February 16, 2008 emergency room treatment at IHS-Lawton. Subsequently, Plaintiffs named Dr. Chappabitty as an expert witness to testify on their behalf. He has prepared an expert report, submitted as Exhibit 1 to Defendant's motion. In his report, Dr. Chappabitty opines that the medical care Mrs. Goodeagle received at IHS-Lawton on February 16, 2008 was "below accepted standards of medical care," and her current condition could have been avoided if proper care had been taken at the time of her February 16 examinations. Defendant's

Exhibit 1, page 2. He also concludes that IHS-Lawton physicians erred in diagnosing Mrs. Goodeagle and failed to conduct tests which should have been administered. *Id.*

Defendant has filed a motion to strike Dr. Chappabitty as a witness, arguing that as a former federal employee, he is statutorily prohibited from testifying against the government. Defendant also argues that Plaintiffs' counsel violated the Oklahoma Rules of Professional Conduct by contacting Dr. Chappabitty and listing him as an expert witness against the government.

II. Analysis:

A. Restrictions regarding testimony of former federal employees:

Federal law mandates that former federal employees cannot make "any communication to or appearance before any … court … on behalf of any other person … in connection with a particular matter in which the United States … is a party or has a direct and substantial interest … [and] in which the [employee] participated personally and substantially . . . ." 18 U.S.C. § 207(a)(1) (2007). The statute specifies that "a former officer or employee in the executive branch of the United States . . . who is subject to the restrictions contained in subsection (a)(1) with respect to a particular matter may not, except pursuant to court order, serve as an expert witness for any other person (except the United States) in that matter." 18 U.S.C. § 207(j)(6)(A) (2007). This prohibition is reemphasized in the Code of Federal Regulations, which states that "where the bar of section 207(a)(1) applies, a former [federal] employee may not serve as an expert witness except: (i) If he is called as a witness by the United States; or (ii) By court order." 5 C.F.R. § 2641.301(f)(2) (2008).

As the parties acknowledge in their respective briefs, there is virtually no case law addressing this portion of the statute. The legislative history of the statute, however, offers some insight into the intended application of the statute. Section 207(a) was originally written to reflect

the notion that "a public servant owes undivided loyalty to the government." H.R. Rep. No. 87-748, at 3 (1961). It does so by essentially preventing an employee from "resigning his position and 'switching sides' in a matter which was before him in his official capacity." *Id.* at 4. In 1978, the statute was revised to "insure government efficiency, eliminate official corruption, and promote even-handed exercise of administrative discretion." S. Rep. No. 95-170, at 30 (1977). Although the statute seems to be specifically geared toward individuals who might take what they learned while working for the government in an official capacity and use it for personal gain in the private sector, the enacted language of the statute is much broader. As a result, it can be interpreted to encompass behavior that does not violate the stated goals of Congress. H.R. Rep. No. 95-1756, pt. 5, (1978). When Congress writes a statute that is overbroad in some respects, "a court may not convert a rule into a general standard without reversing the choice Congress made." *US v. Medico Industries, Inc.*, 784 F.2d 840, 844 (7th Cir. 1986). Although particular conduct may not "undercut the legislature's objective," if it is prohibited by federal statute it cannot be permitted. *Id.*

There is, however, a narrow exception to the statutory prohibition against expert testimony by former federal employees. The exception applies only to individuals who have specialized scientific or technological knowledge unobtainable from anyone else; such individuals may serve as experts regarding that specialized knowledge. 18 U.S.C. § 207(j)(5) (2007). The Code of Federal Regulations takes a broader approach, stating that "extraordinary circumstances [could] justify overriding the specific statutory bar to such [expert] testimony;" those circumstances include, but are not limited to, situations "where no other equivalent expert testimony can be obtained and an employee's prior involvement in the matter would not cause her testimony to have an undue influence on the proceedings." 5. C.F.R. § 2641.301(f), example 4 (2008).

4

Although Dr. Chappabitty's testimony as an expert witness for Plaintiffs would not violate the stated objective of § 207(a), the statute's broad language explicitly prohibits him from acting in that capacity. As a former employee of the Indian Health Service, a government agency, the ban against testifying as an expert witness against the United States applies to him. Plaintiffs do not suggest that his expertise is so specialized that no other equivalent expert testimony can be obtained; accordingly, Dr. Chappabitty does not qualify for the narrow exception in the statute or the broader exception in the Code of Federal Regulations. Pursuant to federal law, he cannot serve as an expert witness in this litigation. To that extent, Defendant's motion is granted.

However, Dr. Chappabitty is not prohibited from testifying as a fact witness. The statute expressly provides an exception for former federal employees who are called to serve as fact witnesses. 18 U.S.C. § 207(j)(6). The rule states that "[n]othing . . . shall prevent an individual from giving testimony under oath, or from making statements required to be made under penalty of perjury . . . ." *Id.* This testimony can be presented "either orally or in writing, including deposition testimony and written affidavits, in connection with a judicial . . . or other legally recognized proceeding in which applicable procedural rules require a witness to declare by oath or affirmation that he will testify truthfully." 5 C.F.R. § 2641.301(f)(1).

According to Plaintiffs' allegations and Dr. Chappabitty's report, he was involved in her treatment at IHS-Lawton, and he has direct knowledge of the facts concerning her medical condition, the treatment provided on February 16, 2008, and the physicians providing that treatment. His testimony under oath at trial and/or in a deposition is authorized by both the statute and the federal regulations. To the extent Defendant's motion seeks to prevent Dr. Chappabitty from offering fact testimony, the motion is denied.

5

B. Restrictions in the Oklahoma Rules of Professional Conduct:

Defendant also contends that Dr. Chappabitty's testimony should be excluded because it was obtained by Plaintiffs' counsel in violation of the Oklahoma Rules of Professional Conduct. Defendant argues that, because Dr. Chappabitty had supervisory or managerial duties at the IHS-Lawton, Plaintiffs' counsel should not have communicated directly with him and should have, instead, contacted Defendant's counsel.

Rule 4.2 of the Oklahoma Rules of Professional Conduct prohibits a lawyer, during his representation of a client, from communication "about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by court order." Okla. Stat. Ann. tit. 5, Ch. 1, App. 3-A (1998). The comments to Rule 4.2 specify that, if the opposing party is an organization, a lawyer is prohibited from communicating "with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." *Id.*

In general, the purpose of Rule 4.2 is to "shield[] the adverse party from improper approaches" by opposing counsel. *Wright by Wright v. Group Health Hosp.*, 691 P.2d 564, 567 (Okla. 1984) (discussing the ABA Canons of Professional Ethics provision, which is identical to Oklahoma's rule). The rule is intended to prevent "a represented party [from] be[ing] taken advantage of by adverse counsel." *Id.* This prohibition is simple to apply when the represented party is an individual person; the scope of the rule, however, is less clear when the client is an organization, and "most courts have rejected the position that the rule automatically prevents an

6

attorney from speaking with all employees of a represented organization." *Messing et. al. v. President and Fellows of Harvard College*, 764 N.E.2d 825, 830 (Mass. 2002).

Although jurisdictions have split on exactly to whom this rule applies in the context of a represented organization, Oklahoma courts have taken a narrow approach. The Oklahoma Supreme Court has held that "in litigation involving corporations, Rule 4.2 applies only to those employees who have the legal authority to bind a corporation in a legal evidentiary sense, i.e., those employees who have 'speaking authority' for the organization." *Fulton v. Lane,* 829 P.2d 959, 960 (Okla. 1992). In determining whether an individual falls within the scope of Rule 4.2, the court should "refer[] to agency principles and ask[] whether the employee has *management* speaking authority . . . ." *Weeks v. Independent School Dist. No. I-89 of Oklahoma County, OK., Bd. of Educ.***,** 230 F. 3d 1201, 1210 (10th Cir. 2000) (emphasis added). In *Weeks,* for instance, the court found that an "operations supervisor" who "over[saw] all the office personnel . . . and . . . subordinate employees in the performance of activities" in her department should be considered an individual with "managerial speaking authority on the areas within her responsibility." *Id.* Furthermore, this prohibition is limited to employees who are currently employed by the represented organization; as the court in *Fulton* noted, "[b]ecause former employees may not speak for or bind the corporation, ex parte communications with former employees are not prohibited." *Fulton,* 829 P.2d at 960 (italics omitted in original).

According to expert report, he was no longer employed by IHS-Lawton at the time Plaintiffs' counsel communicated with him. Dr. Chappabitty's report states that he retired from his position at IHS-Lawton in August of 2008. Because this suit was not filed until May of 2009, counsel would not have contacted him regarding the suit until after he terminated his employment at IHS-Lawton.

7

Because he was not an employee of the hospital when he was contacted, Plaintiffs' counsel did not violate the Oklahoma Rules of Professional Conduct by directly communicating with him.

Even if evidence is presented that suggests Dr. Chappabitty was contacted before his employment ended, that contact would not violate Rule 4.2 because there is no evidence that Dr. Chappabitty held a position at IHS-Lawton that would give him authority to speak for or legally bind the hospital, as required by *Weeks*. Accordingly, there is no evidence that Rule 4.2 was violated if counsel contacted Dr. Chappabitty prior to his retirement.

Having considered the parties' arguments in light of the Oklahoma Rules of Professional Conduct and the application of Rule 4.2 to an employee of an organization, the Court concludes that there is no evidence Plaintiffs' counsel violated the rule in contacting Dr. Chappabitty. Accordingly, Defendant's motion is denied to the extent it seeks exclusion of Dr. Chappabitty's factual testimony on that basis.

III. Conclusion:

For the foregoing reasons, Defendant's motion [Doc. No. 21] to exclude Dr. Chappabitty's testimony is GRANTED in part and DENIED in part. To the extent Defendant seeks to exclude him as an expert witness, the motion is granted. However, Dr. Chappabitty may testify as a fact witness and, to the extent Defendant seeks to exclude his testimony in that capacity, the motion is denied.

IT IS SO ORDERED this 6th day of August, 2010.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE